In the Matter of the Application of GEORGE V. WEBSTER, Appellant, against HARRY C. VAN ALLEN and Another, Respondents, for an Order Requiring Said Defendants to Submit Certain Differences between the Parties to Arbitration.

Fourth Department, June 29, 1926.

Arbitration — contract for arbitration — notes given by defendants are unpaid and defendants do not dispute liability — plaintiff cannot compel arbitration on unpaid notes under Arbitration Law, § 3.

An arbitration provision in a contract for the purchase of silver black foxes, which provides that should any irreconcilable dispute arise in connection with the purchase and sale, such dispute shall be referred to a board of three arbitrators, will not be specifically enforced under section 3 of the Arbitration Law, since it appears that the only question arising under that contract is the payment of two promissory notes which the defendants have not paid, but which they admit are valid and binding obligations.

Under the circumstances stated no controversy exists between the plaintiff and the defendants, and, therefore, there is nothing to submit to arbitration.

Furthermore, the question of the collection of the notes was not one fairly included within the agreement to arbitrate.

TAYLOR, J., and HUBBS, P. J., dissent, with opinion.

APPEAL by the plaintiff, George V. Webster, from an order of the Supreme Court, made at the Jefferson Special Term and entered in the office of the clerk of the county of Jefferson on the 21st day of April, 1925, denying plaintiff's application to compel the defendants to proceed with an arbitration.

*Kilby, Norris & Smith* [*Fred L. Smith* of counsel], for the appellant.

*George E. Van Kennen,* for the respondents.

DAVIS, J. The plaintiff on April 26, 1923, received from the defendants an order for ten pairs of silver black foxes. The order was on a printed form evidently prepared by plaintiff. The price was $15,000, a part of which was paid in cash or by the exchange of property and the remainder consisting of $5,100 represented by individual notes of the defendants for $2,600 and $2,500 respectively.

Following the portion of the order fixing the price and time of payment there are provisions beginning with " It is mutually understood and agreed." These provided in brief for delivery of the foxes on September first, with " ranching privileges " for two years after that date; that the foxes were to be free from sickness, disease or physical defect at the time of delivery; the seller was authorized to select the foxes with a view to their fur qualities, size, confor-

mation, strain and proper matings; the foxes were to remain the property of the plaintiff until full payment of purchase price; and a bill of sale with pedigree charts was to be delivered with the foxes. There was included also a provision "That should any unreconcilable dispute arise in connection with this purchase and sale, that such dispute shall be referred to a board of three arbitrators  *   *   *."

The defendants availed themselves of the "ranching contract" privilege and on September first separately addressed orders to the plaintiff to that effect. On these prepared forms, somewhat similar to the first, there was a stated consideration followed by an agreement relative to the retention of the foxes on the ranch of plaintiff and for their maintenance and care. Again there was included a provision for arbitration. These orders were signed by the defendants obligated thereon and formally accepted in writing by the plaintiff. They then became independent contracts.

It appears that the "ranching" of the foxes was not successful. Many died through what defendants claim was the neglect of plaintiff. The notes given under the first order remained unpaid. The plaintiff sought arbitration under the first contract, and as defendants refused to pay the notes or submit to arbitration, he has petitioned the court at Special Term under the provisions of section 3 of the Arbitration Law for an order that such arbitration proceed in the manner provided for in the contract.

The defendants have opposed the application, alleging that there is no dispute on that contract. They admit giving the order, the amount of the purchase price and the validity of the notes given thereon. They find no fault with plaintiff's performance of the provisions of the sales agreement. They do claim that they have suffered loss through the neglect of plaintiff under the "ranching contract," which they desire to counterclaim in an attempt to collect the notes. The plaintiff does not seek to have the controversies arising under the "ranching contract" submitted to arbitration, nor have defendants asked it.

Arbitration as a form of settlement of controversies is an ancient practice. It existed at common law by voluntary agreement between those having differences. It received statutory sanction in this State at an early date. (R. S. of 1829, part 3, chap. 8, tit. 14.) The practice was continued under the Code of Civil Procedure (Chap. XVII, tit. VIII) and in the Civil Practice Act under present article 84. These statutes provide for settlement of existing controversies, and the remedy became operative only by the voluntary acts of the parties. The Arbitration Law (Laws of 1920, chap. 275, as amd. by Laws of 1921, chap. 14) in section 2 made the remedy by arbitra-

tion applicable to controversies that might arise in the future, if parties to a contract agreed therein to that manner of settlement of their differences; and in section 3 made specific performance of the agreement compellable. (*Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109, 119.)

Arbitration involves the substitution of another tribunal by agreement of parties, for the duly constituted courts. It has furnished a ready and inexpensive method of disposing of certain types of controversies, generally with satisfactory results. It has been freely resorted to by people living in communities remote from frequent courts and by commercial bodies and organizations where a speedy decision by men with a practical knowledge of the subject is desired. Courts, in all proper cases, should be reluctant to limit the scope of so useful a remedy.

It is doubtful if further statutory authority would have been strictly necessary to furnish a remedy to parties who had agreed to arbitrate controversies arising between them under a particular contract, if courts had been willing to depart from ancient precedent. (See *Matter of Berkovitz* v. *Arbib & Houlberg*, 230 N. Y. 261, 276.) However that may be, there has been no change in the fundamental principles of arbitration under the new statute. As Judge CARDOZO says in *Berizzi Co.* v. *Krausz* (239 N. Y. 315, 318): " But the only new public policy declared by the present act is the removal of the ban that had been laid by the decisions of the courts upon general and executory agreements for the arbitration of future differences."

A " controversy " is the basis of arbitration at common law and under the statute. (Arbitration Law, § 2.) It is essential that some genuine controversy exist, and that the agreement to arbitrate must have provided for the submission of the differences that might arise under specified acts or relations of the parties to the contract. On these primary principles the availability of the remedy depends. What controversy is there between the parties under the first contract? Two notes have been given, admittedly valid and due. The defendants offer no defense on their respective notes. Like all delinquent debtors, they merely · neglect to pay. The only function the arbitrators would have to perform would be to compute the interest on the notes, about which there is no dispute, and award judgment. It is a mere default. A controversy is a dispute, a disagreement based on conflict of evidence or opinion. The term implies a situation in which something is asserted on one side and denied on the other.

As was long ago stated in our courts (*Garr* v. *Gomez*, 9 Wend. 649, 661) there are two distinct classes of so-called arbitrations; one in which matters represent a dispute or disagreement on material

rights; the other the reference of a collateral or incidental matter of appraisement or calculation, the decision of which is conclusive of nothing as to the rights of the parties. The latter does not put an end to the controversy but substitutes the judgment of the referee or arbitrator in the place of evidence on the incidental or collateral matter, leaving the controversy open. (See, also, *President, etc., Delaware & H. C. Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 250, 266.)

The formal determination of the amount of principal and interest due on a note is a mere computation, and not such a controversy as requires arbitration. (*Omaha* v. *Omaha Water Co.*, 218 U. S. 180, 192. See, also, 47 L. R. A. [N. S.] 423, note.) There is no " unreconcilable dispute " between the parties on the first contract such as it was agreed would be the subject of arbitration. The neglect to pay a note admittedly due does not fall within that class. If there is no matter in dispute, there is no question to be arbitrated. (*Toledo S. S. Co.* v. *Zenith Transp. Co.*, 184 Fed. 391, 404.) I cannot discover in the Arbitration Law any legislative purpose or intent to furnish a new method of granting default judgments. No such new remedy is needed.

Furthermore, the question of the collection of the notes was not one fairly included within the agreement to arbitrate. It is very evident that the parties intended that the arbitration should cover those executory agreements to which I have already called attention following the words: " It is mutually understood and agreed." These furnished a wide field for future differences. The fixing of the price, the payment either in cash or exchange of property and the giving of notes were matters definitely settled at the outset. To bring matters within the scope of an arbitration agreement they must be included with reasonable precision. This is necessary that there may be jurisdiction in the court to compel performance and in the arbitrators to decide. (*Matter of Kelley*, 240 N. Y. 74, 78; *Matter of Young* v. *Crescent Development Co.*, Id. 244; *Toledo S. S. Co.* v. *Zenith Transp. Co., supra.*)

No doubt each of the parties is seeking to secure tactical advantage. The plaintiff asking arbitration on the first contract, evidently does not want it under the second. The defendants apparently wish to compel the plaintiff to sue, believing, without reason, that they have the right to set up their damages under the ranching contracts as counterclaims against the notes. Such maneuvers do not greatly interest the courts. All the parties should be more concerned in reaching a determination on the merits. There is no reason why plaintiff cannot sue and obtain judgment on his notes; and none why defendants may not obtain arbitration under the

ranching contracts. If they obtain an award, it is then a proper counterclaim. (*Matter of Priore* v. *Schermerhorn*, 237 N. Y. 16, 17.) Or the parties may waive arbitration and settle all their differences in the courts. (*Matter of Zimmerman* v. *Cohen*, 236 N. Y. 15.)

For the reasons stated, the plaintiff is not aggrieved by the refusal of the defendants to perform under the contract for arbitration. The order should be affirmed, with ten dollars costs and disbursements.

CLARK and SEARS, JJ., concur; HUBBS, P. J., and TAYLOR, J., dissent in an opinion by TAYLOR, J., and vote for reversal.

TAYLOR, J. (dissenting). The vendees have breached their contract by not paying. The question is not whether they gave notes; that is incidental. The real question is " have defendants paid as they agreed? " If they have not and will not, there is a real difference and controversy between the parties in regard to the most important provision in the contract — the agreement to pay. It would not matter if the vendees said " we owe the amount," which they do not say. It makes no difference what they say if they will not pay. Clearly the vendor thereupon becomes entitled to avail himself of some remedy. In the absence of a contract that remedy would be in the courts, either on the agreement or upon the notes, the evidence of the indebtedness.

Section 1448 of the Civil Practice Act reads: " Two or more persons may submit to the arbitration of one or more arbitrators *any controversy* existing between them at the time of the submission, *which may be the subject of an action.*" The Arbitration Law has changed this by providing that future differences may be arbitrated.

The vendor has demanded his pay — the vendees refuse to pay; that is a controversy; that controversy is the subject of an action. Therefore, it may be the subject of a contract to arbitrate. Upon the decision of the arbitration a judgment may be entered. (Civ. Prac. Act, § 1461.)

Arbitration is the method the vendor desires to take in collecting his debt. The contract gives him the right to adopt that method.

It is a well-known fact that in New York city arbitration agreements are in favor, as they prevent the long delay necessary when actions are brought in the courts. If it be held that the vendor in this case is not entitled to arbitration, then the benefit of the arbitration agreement may be nullified in all cases where a vendee says: " The contract has been carried out in full; there is no controversy between us; I have not paid, because I have a counterclaim arising out of some other transaction." In such a case the

vendor would be forced to do just what he had tried and contracted to avoid doing — bring his action, and thereby the vendee would obtain the delay which he sought.

The order should be reversed and the motion granted.

HUBBS, P. J., concurs.

Order affirmed, with ten dollars costs and disbursements.