In the Matter of the Application of J. MARKHAM MARSHALL and Others, Petitioners, to Compel the FOX THEATRES CORPORATION, Respondent, to Proceed with Arbitration.

Supreme Court, New York County, August 28, 1930.

*Battle, Levy, Van Tine & Fowler*, for the petitioners.

*Saul E. Rogers*, for the respondent.

SHIENTAG, J.   This application is made under sections 3 and 4 of the Arbitration Law by petitioners, who are members of the bar, to compel the respondent, Fox Theatres Corporation, to proceed to arbitration in accordance with a certain contract in writing entered into between the parties.   The petitioners as counsel had instituted a representative stockholders' action to restrain the consummation of a certain proposed financing plan involving the respondent.   After a temporary injunction was granted a new plan was adopted and a stipulation of discontinuance was signed by petitioners on behalf of their clients, the plaintiffs in the stockholders' action.   One of the conditions of the discontinuance was an agreement by the respondent to pay the petitioners for the legal service they rendered in that proceeding.   The understanding between the parties was reduced to writing.

On April 19, 1930, petitioners wrote to the respondent's attorneys: " It is our understanding, that the amount of compensation to be paid to the attorneys for the plaintiffs by Fox Theatres Corporation, for whose benefit the action was commenced, will be adjusted by agreement, or in the event of a failure to agree, that the question as to the amount of compensation will be submitted to arbitration.

" In the event of the matter going to arbitration we would be willing to agree that the decision of the arbitrator, upon whom we may mutually agree, be final."

To this respondent's attorneys replied: " We acknowledge receipt of your letter of the 19th instant in the above, and are authorized by Fox Theatres Corporation to confirm to you your understanding as therein expressed that the amount of compensation to be paid to the attorneys for the plaintiffs by Fox Theatres Corporation will be adjusted by agreement, or, in the event of a failure to agree, that the question as to the amount of compensation will be submitted to arbitration, the decision of the Arbitrator to be final.

" In keeping with the foregoing understanding, we wish to advise you that Fox Theatres Corporation is willing to pay as such compensation the sum of $10,000.

" As our understanding contemplated that an agreement as to compensation could be arrived at, we would appreciate receiving your own suggestion at your earliest convenience."

The parties thereafter failed to agree on the amount of compensation.   Petitioners refused to accept the sum of $10,000 and demanded a much larger amount.   Hence this application to compel arbitration.

Two main questions are presented:

(1) Is this an agreement to arbitrate an existing controversy or one thereafter arising between the parties?

(2) Is the amount of compensation to an attorney for legal services the proper subject of arbitration?

With respect to the first question, if the agreement of the parties is to be considered as one to submit an existing controversy or dispute to arbitration, petitioners cannot prevail, for in that event the Civil Practice Act (§ 1449) requires the agreement to be formally acknowledged in the same manner as a deed to real estate. That was not done in this case. If, on the other hand, the agreement is to be construed as one to submit to arbitration a controversy or dispute which might arise in the future a formal acknowledgment is unnecessary; a writing will suffice.

The two letters above quoted constitute an agreement between the parties to the effect, *first,* that the petitioners are entitled to some compensation for the legal services rendered, and that the Fox Theatres Corporation assumes responsibility therefor. *Second,* that the parties would attempt to agree on the amount of compensation, and, *third,* if they could not agree, then the question of the amount of compensation was to be submitted to arbitration, the decision of the arbitrator to be final. I hold that the agreement in this case is a written contract to settle by arbitration a controversy thereafter arising between the parties. It is not a submission to arbitration of an existing controversy between them. " A controversy is a dispute, a disagreement based on conflict of evidence or opinion. The term implies a situation in which something is asserted on one side and denied on the other." (*Matter of Webster* v. *Van Allen,* 217 App. Div. 219, 221.)

On April 22, 1930, when the agreement as a written instrument became effective, petitioners wrote that the amount of compensation " will be adjusted by agreement, or in the event of failure to agree that the question will be submitted to arbitration." This was confirmed by the respondent. Up to that time there was no dispute, both parties being agreed that the petitioners were entitled to compensation. In an attempt to arrive at an amicable agreement the respondent then offered $10,000, with this significant observation: " As our understanding contemplated that an agreement as to compensation could be arrived at, we would appreciate receiving your own suggestion at your earliest convenience." It was only after the petitioners submitted a proposal for a much larger sum that the petitioners realized that the difference between them was irreconcilable and then for the first time a controversy or dispute arose.

We come now to the second contention of the respondent, that this is a controversy dealing with a matter of appraisal or valuation which cannot be made the subject of compulsory arbitra-

tion. In support of this proposition respondent cites *Matter of Fletcher* (237 N. Y. 440); *Matter of American Insurance Co.* (208 App. Div. 168) and *Grody v. Silverman* (222 id. 526, 527). These cases are not in point. The basis for disallowing compulsory arbitration in such cases was that they involved collateral or incidental matters, the decision of which would not settle the fundamental controversy between the parties by leading to a proper judgment which would dispose of all matters in dispute. The distinction is well pointed out in *Matter of Webster v. Van Allen* (*supra*) where it is said: " As was long ago stated in our courts (*Garr v. Gomez*, 9 Wend. 649, 661) there are two distinct classes of so-called arbitrations; one in which matters represent a dispute or disagreement on material rights; the other the reference of a collateral or incidental matter of appraisement or calculation, the decision of which is conclusive of nothing as to the rights of the parties. The latter does not put an end to the controversy but substitutes the judgment of the referee or arbitrator in the place of evidence on the incidental or collateral matter, leaving the controversy open. (See, also, *President, etc., of Delaware & H. C. Co. v. Pennsylvania Coal Co.*, 50 N. Y. 250, 266.)" (217 App. Div. 219, 221.)

Respondent is in error in contending that questions of valuations or appraisal are necessarily collateral to the issues between the parties and thus necessarily outside the scope of the Arbitration Law. These questions may go to the very heart of the controversy and the fixing of a valuation by the arbitrator made the basis of the award of judgment. This situation was presented in the recent case of *Matter of Buccini v. Paterno Construction Co.* (253 N. Y. 256, 258). There the petitioner's testator made a contract for services with the respondent. The agreement contained the provision: " All questions that may arise under this contract and in the performance of the work thereunder shall be submitted to arbitration at the choice of either of the parties hereto." Plaintiff's testator died while the work was in progress and the respondent, the owner, became liable for benefits received. When the value of such benefits was disputed, the executrix demanded that the controversy be submitted to arbitration. The case came to the Court of Appeals after the Appellate Division (228 App. Div. 604) had reversed the determination of the Supreme Court at Special Term which granted the application. The Court of Appeals, after referring to the arbitration provision before quoted, said (253 N. Y. 256, 258): " We think the controversy as to value is within the range of that provision. Into every contract of personal service

the law reads ' the implied condition ' that sickness or death shall be an excuse for non-performance. (*Spalding* v. *Rosa* [71 N. Y. 40]; *Dolan* v. *Rodgers*, 149 N. Y. 489, 493, 495.) The parties may say by their contract what compensation shall be made in the event of that excuse. The award will then conform to the expression of their will. They may leave the subject open, to be governed by the law itself. The award will then conform to the principles of liability in *quasi*-contract and to the considerations of equity and justice by which that liability is governed. In either event the controversy is one that has its origin in the contract and in the performance of the work thereunder, just as much as if the work had been completed under a contract silent as to price, and the controversy had relation to the reasonable value."

This latest pronouncement of the Court of Appeals seems to be decisive of the instant application. The application to compel an arbitration is granted. Settle order naming an arbitrator if the parties are able to agree on one or, in the event of disagreement, leaving the selection to the court.