PATHE LABORATORIES, Inc., v. DU PONT FILM MFG. CORPORATION.

District Court, S. D. New York.

Jan. 16, 1943.

Phillips, Nizer, Benjamin & Krim, of New York City (Louis Nizer, of New York City, of counsel), for plaintiff.

William H. Button and Theodore E. Larson, both of New York City, and Abel Klaw, of Wilmington, Del., for defendant.

Robert H. Snyder, of New York City, and Clarence R. Runals, of Niagara Falls, N. Y., for E. I. du Pont de Nemours & Co., Inc.

RIFKIND, District Judge.

Defendant moves under Rule 45(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to c ash a subpoena duces tecum which comma ded E. I. du Pont de Nemours & Comp ny, Inc., hereinafter referred to as E. I. du Pont, to produce before a Special Master appointed by this Court, all records, data, invoices and documents in its custody relating to the costs of power and nitrocellulose for the period from October 1, 1936, to December 18, 1937. E. I. du Pont moves for the same relief.

This is an action to recover damages arising out of alleged overcharges in breach of a contract dated February 3, 1925, pursuant to which defendant contracted to sell to plaintiff cinematographic film at a price of cost plus 30% basis. One of the inducements leading to the execution of this contract was the simultaneous execution of another contract between defendant and E. I. du Pont under the terms of which E. I. du Pont agreed to sell to defendant all the nitrocellulose, power and other material which the defendant would require in its business, on a cost plus 25% basis. In manufacturing the film which defendant was to sell to plaintiff, it was to utilize the products so purchased from E. I. du Pont.

Shortly before the execution of these two contracts, and pursuant to an agreement entered into in October, 1924, plaintiff and E. I. du Pont organized the defendant corporation and each transferred certain property to it. Plaintiff transferred all rights under a certain contract between it and Pathe Cinema Societe Anonyme, a French company, for the manufacture, sale and exploitation in the United States of photographic film and, in return, it received 49% of the common stock of the defendant. E. I. du Pont transferred certain land, buildings and machinery located at Parlin, N. J., in return for 51% of the common stock and all the preferred stock. The board of directors of the new corporation consisted of three members nominated by plaintiff and four nominated by E. I. du Pont.

Following the execution of the two contracts, E. I. du Pont gradually acquired ownership of all the common stock of the defendant. It purchased the balance of the outstanding shares in November, 1941, and the following month defendant was dissolved. However, this action was commenced before that time and before defendant became a wholly owned subsidiary of E. I. du Pont.

The original complaint contained two causes of action. The first alleged that for

the period from October 1, 1936, to December 18, 1937, the defendant breached its contract by charging more than cost plus 30% for 35 mm. film. The second alleged that during the entire term of the contract, the defendant overcharged for a special kind of film known as safety film. The defendant admitted having charged more than cost plus 30% for the period from October 1, 1936, to December 18, 1937, but alleged that the contract terminated on October 1, 1936, the effective date of the Robinson-Patman Price Discrimination Act, 15 U.S.C.A. §§ 13-13b, 21a. Defendant denied having charged more than the contract price for any period prior to that time. After joinder of issue, and at a pre-trial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure, the defendant moved for an order referring to a Special Master the issue as to plaintiff's measure of damages in the event of judgment in its favor. The motion was granted and in the order of reference it was provided that the Special Master was to have the usual powers conferred by the Rules of Civil Procedure. It further provided that he was empowered to examine and require the production of any and all books of any party and to issue subpoenas to secure the attendance of witnesses.

Thereafter, and while the hearings before the Special Master were in progress, plaintiff amended its complaint so as to include therein another cause of action for the period from February 3, 1925, to September 30, 1936. Therein plaintiff alleged that during that period the defendant charged more than the contract price for 35 mm. film. This was denied by the defendant. However, the order appointing the Special Master was not amended so as to include this cause of action and no proof has been taken with reference thereto.

Briefly, then, we are dealing with three causes of action, as follows:

1. For overcharges on positive film during October 1, 1936, to December 18, 1937;

2. for overcharges on positive film from February 3, 1925, to September 30, 1936;

3. for overcharges on safety film throughout the contract period, February 3, 1925, to December 18, 1937.

The issues of 1 and 3 only have been referred to a Special Master and the subpoena which is the subject of this motion relates only to the issues in 1.

Much testimony was taken at the hearings before the Special Master and it developed that the cost to the defendant of manufacturing film might have been inflated by the fact that it paid more to E. I. du Pont for nitrocellulose and power than cost plus 25%. The Special Master, therefore, requested the defendant to obtain certain books and records from E. I. du Pont in order that this question might be inquired into. However, counsel for defendant informed the Special Master that E. I. du Pont refused to permit an examination of its records. The Special Master then wrote to defendant's counsel summarizing his reasons why the records of E. I. du Pont were relevant, material and necessary; but to no avail; whereupon, the subpoena now challenged was obtained.

In support of their motions both defendant and E. I. du Pont contend that the latter company is not a party to this action; that its records are entirely immaterial and irrelevant on the issue as to plaintiff's damages in the event that it was overcharged by the defendant; that the production of the records in question would result in a disclosure of valuable and carefully guarded trade secrets; that for this reason there is a clause in the contract between defendant and E. I. du Pont to the effect that disputes as to cost were to be referred to a named firm of accountants whose decision was to be final and binding; that this method for settling cost disputes should not be departed from; and that in any event the production of the records would place an unreasonable burden on the witness because such records are bulky and voluminous and are scattered throughout a number of different plants located in different cities. Many affidavits have been submitted in support of and against these contentions.

Rule 45(b), Federal Rules of Civil Procedure, provides that this Court may quash a subpoena if it is "unreasonable and oppressive". In construing this rule, judges of this district have held that a subpoena may be quashed if it requires the production of immaterial and irrelevant documents. Chase National Bank v. Portland General Electric Co., D.C., 2 F.R. D. 484, Goddard, J.; United States v. National City Bank, D.C., 2 F.R.D. 46, Man-

delbaum, J.; United States v. Aluminum Company of America, D.C., 1 F.R.D. 62, Caffey, J.; 403–411 East 65th St. Corp. v. Ford Motor Co., D.C., 27 F.Supp. 37, Leibell, J.

■■ However, in none of these cases did the Court have before it a motion to quash a subpoena commanding the production of records before a duly appointed Special Master, and Rule 45 should be read in conjunction with Rule 53 which provides that a Special Master "may require the production before him of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. He may rule upon the admissibility of evidence unless otherwise directed by the order of reference * * *." It would seem, therefore, that, in the absence of any direction to the contrary, and in the absence of any special circumstances, all questions relating to the relevancy and materiality of documentary evidence should be left to the Special Master who undoubtedly is more familiar with the facts in issue before him and is better able to determine such questions. To hold otherwise would be contrary to the plain provisions of Rule 53, would thwart the purposes for which Special Masters are appointed and would hamper and impede the work of this Court. See In re Automatic Musical Co., D.C.N. D.N.Y.1913, 204 F. 334; Hoe v. Scott, C. C.N.J.1898, 87 F. 220; Lull v. Clark, C.C. N.D.N.Y.1884, 20 F. 454.

■■ As pointed out in Moore's Federal Practice, Vol. 3, § 53.04 p. 3135, "When difficult questions of law arise upon a reference, the decision upon which may admit or exclude a large amount of evidence, the party aggrieved by the Master's rulings may apply to the court for instructions to the Master upon the subject, but, as indicated, such applications are granted only in extraordinary cases". Here the Master has directed the defendant to produce the records in question. He has in effect found that these records are material, relevant and necessary and his finding in that respect will not be disturbed at this time unless clearly erroneous.

■■ The contract sued upon is a cost plus contract and the correct rule of law with reference to such contracts, in an action by the contractor for payment, is that he must show "that the moneys which he claims to have expended were necessarily paid for materials and work upon the job. * * *. If the contractor fails to do this he should only be allowed the reasonable cost and his percentage." Title Guarantee & Trust Co. v. Pam, Sup. 155 N.Y.S. 333, affirmed 192 App.Div. 268, 182 N.Y.S. 824, affirmed 232 N.Y. 441, 134 N.E. 525; reargument denied 233 N.Y. 530, 135 N.E. 904.

In the case at bar, the defendant had a contract with E. I. du Pont pursuant to which it could obtain the ingredients and power needed to manufacture the film sold to the plaintiff, at a price equal to cost to E. I. du Pont plus 25%. If, despite this provision, defendant paid more to E. I. du Pont than that price, it is a reasonable inference that the moneys which it claims to have expended were not "necessarily" paid and, if this is so, it has exceeded the contract price in its charges to plaintiff. The determination whether the moneys were necessarily expended, therefore, requires an inquiry into the cost records of E. I. du Pont. Add to this the facts that the contract between defendant and E. I. du Pont was one of the inducing causes for the execution of the contract between plaintiff and defendant, that these two contracts were simultaneously executed as part of one transaction and that at all times E. I. du Pont owned a controlling interest in the defendant, and it is readily apparent that the documents in question are not so clearly irrelevant and immaterial as to warrant the conclusion that the Special Master's direction was clearly erroneous.

■ Nor am I impressed by the contention that the production of these records will result in the disclosure of valuable trade secrets. It does not seem plausible that a corporation as large as E. I. du Pont would allow trade secrets to be kept in financial records which are always subject to scrutiny by taxing authorities and other governmental agencies. Furthermore, plaintiff is not in competition with E. I. du Pont. The records are to be examined by accountants and lawyers and not by chemists or others expert in that field. It must be assumed that the Special Master, in the exercise of his discretion, will not permit the publication or disclosure of any trade secrets which might be contained in such records.

■ The fact that the records are voluminous and cumbersome and are scattered throughout the various plants of E.

I. du Pont is troublesome but is not a sufficient reason for quashing the subpoena. In any event, the plaintiff has offered to send accountants at its own expense to the witness' plants in Wilmington, Delaware, and Parlin, N. J., to inspect the records in lieu of having them brought before the Special Master. This should eliminate much of the inconvenience and expense to which the witness would otherwise be put.

■ As far as the arbitration clause in the contract between the defendant and E. I. du Pont is concerned it is sufficient to say that that clause is in no way binding on the plaintiff who was not a party to such contract and who is not suing on that contract either as third party beneficiary or otherwise. Furthermore, such clause is no more binding on plaintiff than a similar clause in the contract between plaintiff and defendant which clause is the basis of a companion motion of the defendant decided herewith.

That motion is addressed to the issue of cost for the period prior to October 1, 1936, and relates, therefore, to the second and third causes of action. The defendant, by its motion, seeks the following relief: "That all questions as to the cost to defendant of positive and safety film from February 3, 1925 to and including September 30, 1936, be referred for final determination to Price Waterhouse and Company, in accordance with the provisions of Paragraph 12" of the contract; that the court direct the procedure to be followed in presenting the issues to Price Waterhouse and Company; that Price Waterhouse and Company's "determination shall be embodied in a written report or decision" which shall be filed in the clerk's office; and that "the determination by Price Waterhouse and Company as to any and all such questions as to cost, shall be final, binding and conclusive upon the parties hereto".

Paragraph 12 of the contract reads as follows: "12. In the event of the parties hereto being unable to concur at any time in any question of cost of any film purchased hereunder, then and in that event Price, Waterhouse and Company (certified public accountants) of New York City, or in case of their refusal or inability to act, such other reputable firm of certified public accountants of New York City as may be mutually agreed upon, shall determine such question, and the decision of said Price,

Waterhouse and Company, or other reputable accountants, with reference to the question of cost shall be final and binding upon both parties hereto."

It is quite clear that the heart of the controversy between plaintiff and defendant is a "question of cost" which, by the express terms of § 12, they have agreed to refer to Price Waterhouse and Company for a determination which is to be "final and binding". Were it necessary to decide that question I should, therefore, incline to the view that, for purposes of this controversy, § 12 is an arbitration clause. Conceivably other controversies might have arisen with respect to which the clause would require merely a reference of a collateral or incidental matter. The distinction has been analyzed in Matter of Webster v. Van Allen, 1926, 217 App.Div. 219, 216 N.Y.S. 552, and Matter of Marshall v. Fox Theatres Corp., 1930, 147 Misc. 4, 262 N.Y.S. 191.

■ If defendant's effort to obtain specific enforcement of § 12 is in effect an application for compulsory arbitration it opens a field of interesting speculation. Since the contract was made prior to January 1, 1926, it cannot be enforced under the Federal Arbitration Law, § 15, 9 U.S.C.A. § 15; Ex parte De Simone, 2 Cir., 1929, 36 F.2d 773; Continental Grain Co. v. Dant & Russell, Inc., 9 Cir., 1941, 118 F.2d 967.

■ And it is at least doubtful whether federal courts can enforce the New York arbitration statutes, N. Y. Civil Practice Act, Art. 84, which were in effect at the time the contract was made. The two last mentioned authorities indicate a negative answer; but both were in admiralty and outside the sphere of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. See, also, California Prune & Apricot Growers Ass'n v. Catz American Co., 9 Cir., 1932, 60 F.2d 788, 85 A.L.R. 1117; Voutrey v. General Baking Co., D.C.E.D.Pa.1941, 39 F.Supp. 974.

Doubt on the applicability of Erie R. Co. v. Tompkins is intensified by the New York rule that the relief afforded by the arbitration statutes is procedural rather than substantive. Berkovitz v. Arbib & Houlberg, 1921, 230 N.Y. 261, 130 N.E. 288; Meacham v. Jamestown, 1914, 211 N.Y. 346, 105 N.E. 653, Ann.Cas.1915C, 851. Garrett v. Moore-McCormack Company,

Inc., 63 S.Ct. 246, 251, 87 L.Ed. ——, December 14, 1942.

■ In the last cited case the Court said: "The constant objective of legislation and jurisprudence is to assure litigants full protection for all substantive rights intended to be afforded them by the jurisdiction in which the right itself originates. Not so long ago we sought to achieve this result with respect to enforcement in the federal courts of rights created or governed by state law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487".

The case at bar, however, does not demand an answer to these questions. Whether § 12 is an enforceable or unenforcible arbitration clause or whether it is a clause for the reference of an incidental issue, it is nonetheless subject to waiver and I have concluded that defendant has waived whatever rights it had thereunder.

On November 30, 1939, defendant made a motion addressed to the original complaint and on December 18, 1939, it served its answer. In neither of these did defendant invoke this clause. Defendant offers the explanation that since it was challenging the existence of the contract after September 30, 1936, it could not consistently invoke one of its provisions. But this explanation does not embrace the cause of action for safety film which embraced the entire contract period. The new cause of action was pleaded in the amended complaint in April, 1942.

■ The defendant opposed such amendment but not upon the ground that the controversy should be referred. Defendant then denied liability in an amended answer filed on May 4, 1942, but again no claim was made that the matter should be referred. In August, 1942, defendant opposed plaintiff's motion for a discovery and inspection and cross-moved for partial summary judgment in its favor but still no reference to the accountants was requested. It was on defendant's motion that the Special Master was appointed to take testimony on the issue of cost. To grant this motion would mean that Price Waterhouse & Company would have to perform the same function with respect to some of the issues already being heard the Special Master. It is apparent, efore, that defendant's request has not timely made. Radiator Specialty Co.

v. Cannon Mills, 4 Cir., 1938, 97 F.2d 318, 117 A.L.R. 299; La Nacional Platanera S. C. L. v. No. American F. & S. S. Corp., 5 Cir., 1936, 84 F.2d 881; Jones v. Fox Film Corp., 5 Cir., 1934, 68 F.2d 116; The Belize, D.C.S.D.N.Y., 1938, 25 F.Supp. 663; Zimmerman v. Cohen, 1923, 236 N. Y. 15, 139 N.E. 764; Oklahoma Publishing Co. v. Parsons & Whittemore, Inc., 1938, 255 App.Div. 589, 8 N.Y.S.2d 432; Nagy v. Arcas Brass & Iron Co., 1926, 242 N.Y. 97, 150 N.E. 614.

The motions to quash the subpoena duces tecum are denied. The motion to have all questions of cost for the period before October 1, 1936, referred to Price Waterhouse & Company is likewise denied.

Settle order on notice.