## MARX v. CHASE ·NAT. BANK.
### No. 176.

Circuit Court of Appeals, Second Circuit.

Feb. 24, 1941.

Mudge, Stern, Williams & Tucker, of New York City (Henry Root Stern, George L. Trumbull, and Donald Kehl, all of New York City, of counsel), for Chase Nat. Bank.

Maurice Finkelstein and Wagner, Quillinan & Rifkind, all of New York City (Simon H. Rifkind, Maurice Finkelstein, and Lawrence R. Eno, all of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

PER CURIAM.

This is an appeal from an order in bankruptcy, modifying the order of a referee which had compelled a witness, the Chase National Bank, to produce certain documents for inspection in an examination under § 21, sub. a, Bankr.Act, 11 U.S.C.A. § 44, sub. a. The examination was ancillary to a voluntary reorganization under § 77B, 11 U.S.C.A. § 207, begun in the Northern District of Illinois; the trustee had obtained from the Southern District of New York the usual order for examination under § 21, sub. a, in the course of which the referee directed the bank to produce a large number of documents and to submit them to the trustee for inspection, which the bank refused to do. The facts developed by affidavit or in the examination, which in our judgment justified the order were in substance as follows.

The Webster Securities Corporation, the debtor in reorganization, was wholly owned by one, Clarke; its assets included not only all the common shares of another company, the Public Utilities Securities Corporation, but a large number of .shares of a third company, the Utilities Power and Light Corporation, apparently an operating company. Moreover, the Public Utilities Securities Corporation controlled the Utilities Power and Light Corporation, so that in the end it was Clarke who controlled the Utilities Power and Light Corporation. Clarke frequently bought securities on a large scale in his own name for all three of these companies; in addition he was engaged along with others in complicated transactions involving the purchase of shares in General Theatres Equipment Inc., designed, as the trustee asserted, to secure control of the Fox Film Corporation. The bank, through an affiliated "securities company," had "become an important factor in the entire operations of Utilities Power and Light Corporation" and of Public Utilities Securities

Corporation; it was a part of the trustee's effort to learn just what its relation was to both of these companies and to the debtor. On April 15, 1931, Clarke borrowed of the bank $1,875,000, pledging as security shares of Utilities Power and Light Corporation owned by the debtor; and on May 15th the debtor paid this note with interest and redeemed the pledge. The trustee, asserting that this loan was a step in the acquisition by Clarke of voting trust certificates in General Theatre Equipment, Inc., has sued the bank to recover the payment, and has alleged that the debtor was insolvent at the time and that the bank knew it. The bank's version is that Clarke borrowed the money on behalf of the debtor, and that it merely redeemed a pledge made to secure a debt of its own.

The documents whose inspection is sought may be properly divided into four groups: (a) the "credit file" and "deposit and loan accounts" of, and the correspondence with, Utilities Power & Light Corporation for 1930 and 1931; (b) correspondence with all persons touching the value of the shares of Utilities Power & Light Corporation during 1930 and 1931; (c) the "credit file" of Clarke for 1930 and 1931; (d) the minutes of all meetings of the bank's board of directors or any committee of the board, mentioning Clarke for the years 1928 through 1931. The bank's reasons for refusing to allow the trustee to inspect these were that the examination of its own officers had showed that the trustee could have no claim against it, and that many of the documents were certainly irrelevant to his claim even if he had one. Furthermore, if this was not true and if it must submit the documents for inspection, that at least the referee should in the first instance examine them to decide which ones were material. The referee refused to do so and directed the bank to produce them all for the trustee's inspection. The bank appealed to the district judge, who affirmed the order except that he directed the referee preliminarily to examine the correspondence with third persons as to the value of Utilities Power & Light shares.

■ The bank is in error as to the scope of the inspection permissible under § 21, sub. a, which it seems to suppose that it can prevent by showing that on the facts the trustee had no case against it, on the theory that a court will provisionally pass upon issues which the very documents to be inspected may help to decide. Even under the old bill of discovery that was not possible; the court permitted no plea to the merits; it was enough if the evidence demanded was relevant to the examining party's "case" or "defense." Pressed Steel Car Company v. Union Pacific R. Co., D.C., S.D.N.Y., 241 F. 964, 966. Now, by Rule 26 (b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is no longer necessary to show that the evidence is relevant "to the claim or defense of the examining party," if it is so to "the subject matter involved." And indeed no more, if as much, was necessary under § 21, sub. a before the New Rules were extended to bankruptcy; because from the beginning it has been recognized that the trustee may inquire at large and without limit except in cases of plain abuse, to be determined in the court's discretion. In re Foerst, D. C. S.D.N.Y., 93 F. 190; In re Fixen & Co., D.C. S.D.Cal., 96 F. 748, 755; In re Horgan & Slattery, 2 Cir., 98 F. 414. Moreover, it is no answer that he was seeking information to prosecute an action against the witness. In re Paramount Publix Corporation, 2 Cir., 82 F.2d 230; In re Bush Terminal Co., 2 Cir., 105 F.2d 156.

■ In the case at bar all the documents demanded may have some relevance to the trustee's action, if to nothing else. Confining ourselves to that, the bank's position is, as we have said, that when the debtor paid Clarke's loan of $1,875,000 it was only redeeming its pledge, and received no preference even though the debtor was insolvent. It cannot be said a priori that Clarke's "credit file" will throw no light upon who was the real borrower in that transaction; and the same is even more obvious as to the bank's minutes. As to the "credit file" and the other documents of the Utilities Power and Light Corporation it is enough that even if the bank's version be true, the value of the pledge at the time of payment will measure any deficiency; and that if there was a deficiency, its payment was an unlawful preference, provided that the debtor was insolvent and the bank knew it. The record does not disclose how far the debtor's solvency depended upon the value of the shares of the Utilities Power & Light Corporation, but we do know that, not only did it directly own a large block of its shares, but that as owner of all the common shares of Public Utilities Securities Corporation, it had an interest in the equity in the shares of Utilities Power & Light Corporation, owned by that com-

pany but subject to its preferred issue. Plainly the value of Utilities Power & Light shares was not impertinent to the solvency of the debtor, and the bank's information as to that value might equally be material in fastening upon it notice of insolvency. For these reasons all the documents should be open to the trustee's inspection if only to assist in the prosecution of the pending action.

However, it is really not necessary to consider so carefully their relation to that action; the trustee was entitled to examine anyone who had had dealings with Clarke or any of his companies, because it was impossible otherwise to unravel such a tangled corporate skein. When people take part in building such a labyrinth, it may be burdensome to help in finding the path out, but it is a public duty which they cannot avoid, and they may only ask protection against inquiries made in bad faith. As to the requirement that the referee shall preliminarily examine the documents to ascertain their relevancy, it seems to us that the modification made by the district judge was all that the situation demanded.

Order affirmed.