**LECO PROPERTIES, Inc., et al. v. R. E. CRUMMER & CO. et al.**

No. 10201.

Circuit Court of Appeals, Fifth Circuit.

May 5, 1942.

J. Franklin Garner, of Lakeland, Fla., Giles J. Patterson, of Jacksonville, Fla., and William K. Whitfield, of Tallahassee, Fla., for appellants.

R. J. Pleus and Joseph P. Lea, Jr., both of Orlando, Fla., for appellees.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appealing from orders[1] in a municipal bankruptcy proceeding brought but not carried to completion by the City of

---

[1] One of the orders entered October 24, 1941, enjoined appellant Leco Properties, Inc., from further continuing or prosecuting the mandamus action which it had brought in the state court against the City to obtain preferential payment

Wauchula, appellants attacked them as void for want of jurisdiction and if not, as erroneous. Appellees, urging that the orders are not appealable, move to dismiss the appeal. On the merits, they insist that the orders are valid and should be affirmed.

The appeals come up in this way. On August 25, 1939, the City of Wauchula, filed a petition for composition of its debts in accordance with the plan[2] attached to the petition. The petition was approved as filed in good faith and as in compliance with the law, and there was an order setting the petition down for hearing, making the plan of composition temporarily operative, and postponing, during the pendency of this proceeding until otherwise ordered, the payment of principal and interest on the city's debts.

On February 9, 1940, the court entered an interlocutory decree, approving the plan as fair and equitable and to the best interest of the creditors, making it temporarily operative pending the final decree, directing the petitioner to begin and carry it through to a conclusion within 60 days, and pending the delivery of the new securities, retaining jurisdiction to consummate the plan and enjoining[3] persons from collecting, or attempting to collect or from suing on account of, the securities affected by the plan of composition.

Thereafter, the city being unable to carry out the plan, a series of orders was entered extending the time for doing so, and on April 11, 1941, it appearing that it would not be carried out, the court issued an order requiring the city to file a statement showing the amount of monies in each separate debt service account, as of the filing of the petition and those received subsequent thereto. The statement having been filed, the court on June 23, 1941, entered an order reciting the failure of the plan, "and that the pendency of the proceedings should be continued insofar as is

---

out of monies levied and collected during the pendency of the bankruptcy proceedings.

The other entered November 6, 1941, adjudged Leco Properties and Garner, its attorney, in contempt for having brought the action and ordered them to pay "to the attorney R. E. Crummer & Company, John R. Hill, D. A. Hester, Virginia S. Pleus and James Davis, creditors of the City of Wauchula, the sum of $740.69, as damages and reasonable attorney's fees incurred by such persons in defending the fund under the control of this bankruptcy proceeding."

[2] (1) The plan listed the bonds outstanding and proposed to refund them by exchanging for them refunding bonds bearing a less rate of interest; (2) reserved for the benefit of the respective security holders, all rights and remedies which were available for the support and enforcement of the original bonds; (3) tax support for the refunding bonds was provided by an agreement between the city and the holders of the refunding bonds for an ad valorem tax levy in each of the years beginning in 1938 until the bonds were retired, amounts for each of the years to be as stated in the plan, beginning with $50,000 and running up to $70,000. The ordinance making this agreement concludes: "The taxes so levied shall be in addition to all other taxes levied by or on behalf of the city and the proceeds thereof of all tax certificates and of all tax certificates and tax deeds issued therefor are hereby appropriated and shall be used exclusively for the purpose for which the same are levied." (4) The plan contained provision for protection of the bondholders if the sums agreed to were not raised for the purchase of the refunding bonds at prices named and generally for carrying out the plan.

[3] "(j) That pending the delivery of the new securities under the plan of composition, and under this order, and pending the entry of a final decree herein, all persons, firms and corporations be and they are hereby enjoined from collecting or enforcing, or attempting to collect or enforce, any claim or claims, against said Petitioner on account of any of the securities affected by the plan of composition, including judgments thereon, and that they be and are hereby further enjoined from prosecuting any suit or suits, at law or in equity, based upon such bonds or coupons, including judgments thereon, or interest thereon, and from commencing any suits by way of mandamus, or otherwise, against Petitioner on account of any such securities or judgments thereon.

"(k) That this Court hereby expressly retains jurisdiction herein to supervise the consummation of said plan of composition, including, among other things, the delivery of the new refunding bonds and the certificates of deposit, and the distribution thereof by the depositary, and for the purpose of entering a final decree herein, together with such injunctional orders as may be necessary to make such plan of composition fully effective when consummated."

necessary to protect the rights of all parties interested in the funds on hand but that such pendency should not interfere with the enforcement of such rights as creditors would otherwise have", and providing for a notice to the creditors, a filing of claims by August 15, 1941, and a distribution accordingly, and for a report by the city to the court of its disbursements under the order.

The order concluded with a paragraph[4] reserving jurisdiction for the purpose of distributing the monies dealt with in the order but specifically dissolving all injunctive orders and authorizing creditors, holding securities affected by the plan of composition, to proceed as they may be advised. Pursuant to this order the city issued its notice and appellant, Leco Properties, through its counsel, Garner, instead of appearing and filing affidavit, sued out and obtained against the city, in the state court, on August 8, 1941, an alternative writ, and on October 9, 1941, a peremptory writ of mandamus, on account of bonds and interest coupons of the city owned by it.

On October 10th, Crummer & Company and the other appellees, filed their motion to enjoin appellants from further proceedings with the mandamus suit, and adjudge them in contempt for steps they had taken therein. On October 10th, a temporary, and on October 24th, a permanent, order restrained and enjoined appellants from further continuing or prosecuting their mandamus action and from seeking or obtaining any benefit on account thereof. This was followed by the order of November 6, 1941, adjudging appellants in contempt for having instituted the proceedings, and ordering them to pay as costs and damages, $740.69.

The motion to dismiss because the orders are interlocutory and therefore not appealable is, neither in its premise nor in its conclusion, well founded. Neither of the orders is interlocutory, each purports to be, each is a final order. By one of them appellants are "permanently" enjoined. By the other they are finally adjudged guilty of contempt and finally ordered to pay money. But if they were interlocutory they are orders in controversies, arising in proceedings in bankruptcy and appealable whether interlocutory or final, under Sec. 47, Title 11, U.S.C.A.

On the merits the matters are not so easily disposed of. As to the injunction decree depriving plaintiff of the benefit of the writ and requiring it to submit its claim in the composition proceeding, there is much to be said for appellants' position. This is, that a municipal composition proceeding,[5] while maintainable under the bankruptcy powers, is a proceeding for voluntary settlement of its indebtedness[6] and not a proceeding to adjudge the city a bankrupt,[7] and though the jurisdiction of the court over the municipality and its debt service funds for the purpose of effectuating the composition is exclusive

---

[4] "5. That the pendency of this cause is hereby continued and jurisdiction is hereby specifically reserved for the purpose of making and enforcing the proper distribution of the monies involved in the prior portions of this order; provided, however, that such pendency shall in no manner constitute a bar to the enforcement by creditors of such rights as they may have on account of securities affected by the Plan of Composition herein; and any and all prior injunctive orders heretofore entered herein against the commencement of continuation of any suits or proceedings having for their purpose the enforcement of such securities, or judgments obtained thereon, be, and the same are, hereby vacated and dissolved; provided further, however, that all monies herein by this order provided to be disbursed are to remain within the sole jurisdiction of this Court and subject to its disposition and shall in no manner be amenable to any suit, writ, or other process other than as specifically ordered and adjudicated in these proceedings."

[5] Chap. 9, Title 11, §§ 401–403.

[6] In speaking of ordinary compositions, the Supreme Court said: "Composition is a settlement by the bankrupt with his creditors. In a measure, the composition supersedes, and is outside of, the bankrupt proceedings. Cumberland Glass [Mfg.] Co. v. De Witt, 237 U.S. 447, 454, 35 S.Ct. 636, 59 L.Ed. 1042. It originates in a voluntary offer by the bankrupt; and results, in the main, from voluntary acceptance by his creditors." Nassau Smelting & Refining Works v. Brightwood Bronze Foundry Co., 265 U.S. 269, 271, 44 S.Ct. 506, 507, 68 L.Ed. 1013.

[7] Sec. 30, Title 11 governing composition of persons subject to be adjudged bankrupt provides in Sub. (e), "Upon the confirmation of a composition, the consideration shall be distributed as the judge shall direct, and the case dismissed. Whenever a composition is not confirmed,

and complete, Poinsett Lbr. & Mfg. Co. v. Drainage District, 8 Cir., 119 F.2d 270; Kelley v. Lassiter, Fla., March 20, 1942, 7 So.2d 458, that jurisdiction does not, it cannot extend to adjudging the city bankrupt or to administering its affairs as in bankruptcy. It is strictly limited to disapproving or to approving and carrying out a proposed composition.[8] Strong support for its view that this jurisdiction may not be enlarged to give the court custody of or control over funds of the city when the proposed composition has failed, is found, in the failure of the statute to provide for such control, Subsec. i of[9] Sec. 303, having been omitted from the 1937 Act. It is found too; in the precisely set out provisions for the exercise of the composition jurisdiction; in the provisions of Subsec. c, Sec. 403, prohibiting the judge from interfering by order or decree with any of the governmental or political powers of the city, its properties or revenues or any income producing properties necessary for governmental purposes unless the plan of composition so provides; in Subsec. i, Sec. 403, disclaiming the intention to control the municipality in exercising its political or governmental power including expenditures therefor; and finally in the reasoning of the Supreme Court in the Bekins Case, United States v. Bekins, 304 U.S. 27, 50, 58 S.Ct. 811, 815, 82 L.Ed. 1137, construing the act as not operating to "restrict [the city's] control over its fiscal affairs" but leaving it "free to manage [its] own affairs."

 So strong is this support that if the city had objected below and were objecting here to the assertion over it and its funds, of the jurisdiction in question, we should be bound to sustain its objection and deny the asserted jurisdiction. But the city is not objecting. On the contrary it has fully acquiesced in the orders as appropriate to, and in, the proceedings so long delayed by its action, and has taken steps to carry them out. We think that it does not lie in the mouth of appellants to complain of orders entered in the assertion of a jurisdiction to which the city has assented, by, in effect, tendering the funds into, and submitting, in the winding up of the proceeding, to their distribution, by the court. Especially will appellants not be permitted to complain of the order taking jurisdiction over the funds when instead of appealing from it as they could have done they elected to test it collaterally. In such a testing the burden rested upon them to show excess of jurisdiction and that burden they have failed to sustain.

It is not meant by this to say that the city could, by consent, confer upon the court a jurisdiction which had not been conferred by law. It is meant though to say; that while the jurisdiction conferred by the statute depending, as it does, upon the city's volition, may not be extended by the court beyond that volition, and that normally the plan of composition failing, the court may not administer upon the funds gathered by the city for use in carrying out the plan, the city may, by further acts of volition, consent to the custody and distribution by the court of the gathered funds, and the jurisdiction, asserted with such consent, may not be questioned by creditors interested in the funds nor may they be reached by process from or judgments in other courts.

The appeal from the contempt order stands differently. Until the order of June 23rd, appellants were under the sweeping injunction embodied in Clause (j), Note 3 supra. This injunction specifically governed the commencement of suits by mandamus or otherwise, and had plaintiffs,

---

the estate shall be administered in bankruptcy as herein provided." Sec. 403 under which this proceeding was brought, contains no such provision but on the contrary provides only for, either confirmation of the plan or a dismissal of the proceedings.

[8] Sub. f Sec. 403 provides that where the composition has been confirmed by an interlocutory decree and "the money, securities, or other consideration to be delivered to the creditors under the terms of the plan shall have been deposited with the court or such disbursing agent as the court may appoint or shall otherwise be made available for the credi-

tors" the court shall enter a final decree discharging the municipality of all debts and liabilities dealt with in the plan except as provided therein.

[9] "(i) In proceedings under this chapter and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the taxing district and the rights and liabilities of creditors, and of all persons with respect to the taxing district and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the petition of the taxing district was approved."

during the continuance of that injunction, proceeded as they did, they would plainly have been in contempt of court. But, by the June 23rd order it was expressly provided that the pendency of the composition proceeding for the purpose of distributing the funds "shall in no manner constitute a bar to the enforcement by creditors of such rights as they may have on account of securities affected by the plan of composition herein, and any and all prior injunctive orders heretofore entered herein, against the commencement or continuation of any suits or proceedings having for their purpose the enforcement of such securities or judgment obtained thereon, be and the same are hereby vacated and dissolved." Appellants did not commence their proceeding until long afterwards, and they were commenced then by appellant Leco under the advice of its counsel given in good faith and, as appears from their brief, in a sincere and not unreasonable belief that they were within their rights in so proceeding. From the beginning of the mandamus proceeding until enjoined by the order of the court from proceeding further therein, appellant and his counsel proceeded, in an orderly fashion before a state court having general jurisdiction, to claim and obtain the rights they thought they had. Neither, except as authorized by that court, took any action with regard to the funds. And if appellants, under no injunction not to sue it out, are guilty of contempt in suing out the mandamus, the judge of the state court is guilty too for he agreed with them that they were entitled to the writ.

Unfortunate and unsatisfactory as such scrambles for jurisdiction are, and to be avoided whenever possible by seemly and orderly procedure, Bryan v. Speakman, 5 Cir., 53 F.2d 463, a contempt proceeding is not the way to resolve them, nor to advance the establishment between state and federal courts of that greatly to be desired comity.

The contempt judgment may not stand. Bender v. Young, Mo.Sup., 252 S.W. 691; In re Watts, 190 U.S. 1, 23 S.Ct. 718, 47 L.Ed. 933; 27 A.L.R. 19; In re Howell, 273 Mo. 96, 200 S.W. 65. The injunction order is affirmed. The contempt order is reversed and the proceeding for it is dismissed. The costs of the appeal are to be equally divided.

Affirmed in part and reversed and dismissed in part.

Wallace E. Davis, of Orlando, Fla., for appellants E. H. Ware et al., individually and as Commissioners of City of Avon Park, Florida, debtor.

Joseph P. Lea, Jr., and R. J. Pleus, both of Orlando, Fla., for R. E. Crummer & Co. et al., appellees.