**In re MANUFACTURERS TRADING CORP.**
**KIERSTED v. HADDEN (two cases).**
Nos. 11290, 11291.

United States Court of Appeals
Sixth Circuit.
As Amended March 17, 1952.
Feb. 5, 1952.

Seth C. Taft, Cleveland, Ohio (Jones, Day, Cockley & Reavis, all of Cleveland, Ohio, on the brief), for appellant.

B. B. Fensterstock, New York City (L. C. Wykoff, Cleveland, Ohio, on the brief, Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, Zalkin & Cohen, New York City, of counsel), for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

The Manufacturers Trading Corporation, a company engaged in loaning money to business enterprises upon miscellaneous collateral, filed its petition in bankruptcy for reorganization under the provisions of Chapter X of the Bankruptcy Act, 11 U.S. C.A. § 501 et seq., in the district court. An order was entered by the court, appointing John A. Hadden, Disinterested Trustee, and providing that the Trustee, upon his qualification,

"(a) shall forthwith investigate the acts, conduct, property, liabilities and financial condition of the Debtor; the operation of its business and the desirability of the continuance thereof; and any other matter relative to the proceeding or to the formulation of a plan, and report thereon to this Court;

"(b) may examine the officers and directors of the Debtor and any other witnesses concerning the foregoing matters or any of them;

"(c) shall report to this Court any facts ascertained by him pertaining to fraud, mismanagement and irregularities, and to any cause of action available to the estate;

"(d) shall, at the earliest date practicable, prepare and submit a brief statement of his investigation of the property, liabilities and financial condition of the Debtor, the operation of its business and the desirability of the continuance thereof, in such form and manner as this Court may direct, to the creditors, the stockholders, Securities & Exchange Commission, and such other persons as this Court may designate."

The proceedings were referred to Honorable Carl D. Friebolin, as Special Master. Subsequently, appellant herein, Robert W. Kiersted, was served with a subpœna duces tecum, to which was attached an exhibit requiring him to bring with him numerous documents relating to accounting work performed for the debtor in bankruptcy, Manufacturers Trading Corporation, by the firm of Barrow, Wade, Guthrie & Company, of which appellant Kiersted was a partner. In answer to the subpœna, Kiersted appeared before the Special Master, accompanied by his attorney, who, acting apparently on the authority of Shotkin v. Nelson, 10 Cir., 146 F.2d 402, inquired of counsel for the Trustee in Bankruptcy what purpose he had in examining Kiersted. Counsel for the Trustee replied that the purpose of the examination was to enable the Trustee to determine whether or not any basis for a cause of action existed in favor of the Trustee against the accounting firm of Barrow, Wade, Guthrie & Company, arising out of the preparation

and submission by this firm of various audit reports over a period of years.

Counsel for appellant then stated to the Special Master that already one creditor of the Manufacturers Trading Corporation had sued the accounting firm of Barrow, Wade, Guthrie & Company in the district court in New York, claiming damages of One and a Half Million Dollars, and that there were other creditors of the bankrupt debtor with claims of hundreds of thousands of dollars on whose behalf demand had theretofore been made upon the accounting company to produce documents and submit to examination, under threat of litigation. Counsel then declared that he could not be oblivious to the fact that interests other than the Trustee's would be served by the examination of the appellant by the Special Master; that he had every confidence that the court would sustain him in his contention that the examination of appellant for the purposes announced by the Trustee's counsel, was improper, unlawful, oppressive, and beyond the duties and rights of the Trustee; and he thereupon submitted a motion to quash the subpoena on the above mentioned grounds. See Rule 45(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

After the presentation of the foregoing motion, the Special Master observed to counsel for appellant: "Isn't the difficulty here that you fail to understand that under the express provisions of the Bankruptcy Act, under sections 167 and 21–A, that a Trustee may examine at length with regard to the accounts and property of the bankrupt, and anybody who had relations with the bankrupt? There is no issue about it. This is a fishing expedition, deliberately so, and expressly so, and admittedly so, and entirely proper. Everything you say may be conceded, but that doesn't void the requirement that a witness appear and testify. Your motion would be valid and have some effect if after you began examination they started talking about the witness' domestic relations, or something of that kind. But as long as he is talking about some relations between Barrow, Wade, and Guthrie, and Manufacturers Trading Corporation or, perhaps, some creditor of

Manufacturers Trading Corporation, which might elicit information that they had a claim against Barrow, Wade, and Guthrie or somebody else, all that may be gone into. * * * You can roam all over the field. * * * It may be quite true that all of this is entirely for nothing. It happens over and over again. The Trustee very frequently strikes a dry hole after drilling for days and weeks. That is just all it is. It is not testimony for anything. It can't be used. The transcript can't be used, except with your consent, and except, possibly, to impeach the witness. But as evidence it never can be introduced. I am afraid that is the difficulty, that you misunderstand section 167 and 21–A, which is also part of it."

Counsel for appellant then stated to the Special Master: "We take the position, your Honor, that the provisions of 167, as well as 21–A do not permit the inquiry into and cross-examination for the purpose of determining or exploring whether or not there is a cause of action by the Trustee against the witness or the firm of which he is a partner."

Following this discussion, counsel for the Trustee in Bankruptcy proceeded to the examination of appellant Kiersted, who thereupon refused to answer a question as to the names of the partners of Barrow, Wade, Guthrie & Company. The Special Master then directed him to answer, and he again refused. Appellant then presented his motion to quash the subpoena, which the Special Master denied, stating that it was entirely frivolous. Counsel for appellant then applied to the district court to sustain the motion to quash.

Upon the hearing before the district court, the motion to quash was denied, and Kiersted was directed to continue his examination before the Special Master. When the hearing was resumed, Kiersted again refused to answer the above mentioned question, and the Special Master forthwith certified the proceedings to the district court and recommended that Kiersted be adjudged in contempt and punished therefor. An order of the district court was then issued, directed to Kiersted, ordering him to show cause why he should

not be adjudged in contempt of court and why he should not then and there be committed to prison or otherwise dealt with until he should obey the order of the court. On the hearing of the order to show cause, Kiersted continued to insist that he was not obliged to answer the question addressed to him in the examination before the Special Master; and the district court, accordingly, entered an order holding him in contempt of court and committing him to the custody of the marshal until he should obey the order of the court and submit to the examination before the Special Master. It should here be observed that execution of the order of commitment was withheld by the court to enable appellant's counsel to apply to the court of appeals for supersedeas, which was thereafter granted.

On his appeal, Kiersted contends that the district court was in error in entering its order denying the motion to quash the subpœna duces tecum and ordering him to submit to examination; and in entering the order adjudging appellant guilty of contempt, within the period during which, as appellant claims, he was entitled to an automatic stay of ten days after the entry of the orders. In this regard, he bases his claim upon Rules 54 and 62 of the Federal Rules of Civil Procedure. Appellant further contends that the district court was in error in requiring him to submit to cross-examination for the purpose of exploring the possibility of the existence of a cause of action against him or the firm of accountants of which he was a partner; and that the court further erred in not quashing the subpœna duces tecum on the ground that the command requiring him to produce the documents called for therein was improper, unreasonable, and unlawful. No claim is made that any constitutional privilege against self-incrimination, or unlawful search and seizure, is involved; nor is the competency or relevance of the evidence sought by the Trustee questioned by appellant in so far as it relates to the express purpose of the examination of the witness.

We shall first discuss the question whether appellant was entitled to an automatic stay of ten days after entry of the order denying the motion to quash, before being required to testify and produce records in answer to the subpœna. It is provided in Rule 54 of the Federal Rules of Civil Procedure that a "judgment," as used in those Rules, includes any order from which an appeal may be taken; and under Rule 62 of the Federal Rules of Civil Procedure, it is provided, subject to certain exceptions not here pertinent, that no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of ten days after its entry. In order to qualify, then, for the automatic ten-day stay, a judgment or order must be one from which an appeal may be taken.

The jurisdiction of a federal court of appeals is limited by statute. It has jurisdiction of appeals only from final decisions, Title 28 U.S.C.A. § 1291; and only from specified interlocutory orders of the district courts or judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions; appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property, as well as from interlocutory decrees determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed; and from judgments in civil actions for patent infringement which are final except for accounting. Title 28 U.S.C.A. § 1292.

However, the rule with regard to appeals from orders in bankruptcy is different from that applicable in other cases. It is provided in Title 11 U.S.C.A. § 47, sub. a, that the courts of appeals are invested with appellate jurisdiction from the courts in bankruptcy "in proceedings in bankruptcy, either interlocutory or final." Therefore, although interlocutory orders in legal proceedings are, with few exceptions, not appealable orders, interlocutory orders in bankruptcy proceedings are appealable. The jurisdiction under the above section of the statute is exercised by appeal and in the form and manner of an appeal. See also Order 36, General Orders in Bank-

ruptcy, Title 11 U.S.C.A. following Section 53. The Act, it is to be noted, draws a distinction between "proceedings" and "controversies". Controversies embrace matters which are not mere steps in the ordinary administration of the estate, but present, by intervention or otherwise, distinct and separable issues between the trustees and adverse claimants concerning the right and title to the estate. Proceedings are matters of an administrative character, including questions between the bankrupt and his creditors presented in the ordinary course of the administration of the estate. Schoppe v. First Trust Co., 8 Cir., 101 F.2d 417. It is further said that "proceedings in bankruptcy" include all questions arising in the administration of the bankrupt's estate, such as the appointment of receivers and trustees, orders requiring the bankrupt to surrender property of the estate in bankruptcy, orders requiring the bankrupt's voluntary assignee to surrender property of the estate, orders giving priority to the claim of a creditor, orders directing a set-off of mutual debts, and orders confirming the composition. Morehouse v. Pacific Hardware & Steel Co., 9 Cir., 177 F. 337. There is no question but that we are concerned in this case with a "proceeding" in bankruptcy, rather than a "controversy" arising in proceedings in bankruptcy, and that the order denying the motion to quash is not a final order in a bankruptcy proceeding, but, rather, an interlocutory order.

Is, then, the order of the district court denying the motion to quash the subpœna duces tecum appealable as an interlocutory order in bankruptcy for which appeal is provided by Title 11 U.S.C.A. § 47, sub. a? We think not. Although Title 11 U.S.C.A. § 47, sub. a, grants an appeal from interlocutory orders in proceedings in bankruptcy, this does not mean that every order entered in the course of the proceedings is appealable. Due regard for the efficiency of the administration and dispatch of the proceedings necessitates a common-sense interpretation of the above provision of the statute in order that the right to appeal be limited within reasonable bounds. Collier on Bankruptcy (14th Ed.), Vol. 2, Section 24.39. "Before reviewable, administrative orders (in bankruptcy) must have a certain degree of finality. The salutary purpose of the legislation would be destroyed if every order, no matter how trivial, were subject to review." Hoehn v. McIntosh, 6 Cir., 110 F.2d 119. See also In re Pechin, 3 Cir., 227 F. 853. "It seems evident that before even an interlocutory order is appealable, it must have the character of a formal exercise of judicial power affecting the asserted rights of a party; that is, it must substantially determine some issue, or decide some step in the course of the proceeding. Thus an order to show cause, being merely in the nature of process, is not an appealable order." Collier on Bankruptcy, supra. A motion to quash a subpœna duces tecum is only a motion to set aside process.

The action before us is not one that arises with respect to the administration of the debtor's estate. The issuance of a subpœna duces tecum does not peculiarly partake of the nature of a bankruptcy proceeding, and is not a part of the administration of the estate. An order denying a motion to quash such a subpœna is not an order in a bankruptcy proceeding proper. Such an order could not remotely be considered as an administrative order made in the course of the bankruptcy proceedings. The order denying the motion to quash is, therefore, not of the class of proceedings which is reviewable on appeal. Even though it might affect some substantial right of appellant, it is not a proceeding in bankruptcy from which an appeal can be taken as in the case of the usual interlocutory order made in the administration of the estate. For the order denying the motion to quash does not substantially determine any issue in the proceeding; and an interlocutory order which determines nothing is not appealable. Matter of Hotel Governor Clinton, 2 Cir., 107 F.2d 398; Federal Land Bank v. Hansen, 2 Cir., 113 F.2d 82. Moreover, the determination of whether a subpœna duces tecum, upon motion, is to be set aside is a matter within the discretion of the court. See Shotkin v. Nelson, 10 Cir., 146 F.2d 402.

Motions to vacate orders and the like are addressed to the discretion of the court, and orders denying such motions are not appealable. Old Colony Trust Co. v. Kurn, 8 Cir., 138 F.2d 394. An appeal from an interlocutory order involving the exercise of discretion is allowed only upon a showing of an abuse of discretion, Columbia Foundry Co. v. Lochner, 4 Cir., 179 F.2d 630, 14 A.L.R.2d 1349; and where the granting or refusal of a motion is within the discretion of the court, its order is not an appealable order, Walgreen Drug Stores v. Scruggs Drug Stores, 4 Cir., 129 F.2d 789. In Wayne Gas Co. v. Owens-Illinois Co., 300 U.S. 131, 137, 57 S.Ct. 382, 385, 81 L.Ed. 557, the court held, with regard to a discretionary order in bankruptcy: "The granting of a rehearing is within the court's sound discretion, and a refusal to entertain a motion therefor, or the refusal of the motion, if entertained, is not the subject of appeal."

As so well set forth in the accompanying opinion in this case, there is no question that the authorities are somewhat in conflict on this point, and it is true that a number of cases hold that even discretionary orders in bankruptcy are the subject of an appeal. However, in the opinion of the writer, where the granting or refusal of a motion in bankruptcy is within the discretion of the court, and there is no claim or showing of an abuse of discretion, the order should not be considered an appealable order entitled to an automatic stay of ten days. This would seem to reflect the realities of the situation and to carry out the objectives of the Bankruptcy Act which aims to avoid repeated and useless obstacles and delays based on technicalities. See Bailey v. Glover, 21 Wall. 346, 22 L.Ed. 636; Wiswall et al. v. Campbell et al., 98 U.S. 347, 23 L.Ed. 923; In re Swofford Bros. Dry Goods Co., D.C., 180 F. 549. Such an order as was made in this case was, therefore, not a judgment from which an appeal lies under Rule 54, and did not come within Rule 62 as a judgment for which an automatic stay of ten days was provided.

Were the order here in question to be viewed as an order made in the course of administration of the debtor's estate peculiarly partaking of the nature of a proceeding in bankruptcy—which it is not—nevertheless, under the foregoing authorities, it would not be appealable inasmuch as it was merely an interlocutory order which determined nothing, and in addition, was a determination which was wholly within the discretion of the district court.

Since the motion to quash the subpoena duces tecum and the court's order of denial have essentially nothing to do with the estate in bankruptcy, they do not really constitute proceedings in bankruptcy. It may here be remarked that if the order in question were an order other than in a bankruptcy proceeding, it would not be appealable, either as a final or interlocutory order under Title 28 U.S.C.A. §§ 1291 and 1292. For an order of a district court denying a motion to quash a subpoena duces tecum, requiring one to appear with papers and testify, is not a final decision within the meaning of the statute. Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783; see also International Agricultural Corp. v. Pearce, 4 Cir., 113 F.2d 964; and, furthermore, the order here in question would not be the kind of an interlocutory order from which an appeal could be taken under Title 28 U.S.C.A. § 1292.

■ Neither, then, under Title 11 U.S. C.A. § 47, sub. a, nor under Title 28 U.S. C.A. §§ 1291 and 1292, was the order here in question an appealable order. It was, accordingly, not a judgment under Rule 54, and under Rule 62. Appellant was, therefore, not entitled to an automatic stay of ten days after entry of the order denying his motion to quash the subpoena before being required to testify and produce the records in question.

■ It is to be remarked that in this case, although we have concerned ourselves with a determination whether an order denying a motion to quash a subpoena duces tecum is appealable, the reality of the situation is that the objective of appellant was not directed to quashing the subpoena duces tecum, but to the refusal to answer any questions whatever, regardless of documents called for in the subpoena, that might

indicate a liability on his part or that of his firm, to the debtor. There was no proof or claim on the part of the appellant, as required in such a case, that the documentary material was not relevant and material, or that the issuance of such a subpoena was arbitrary and capricious. The claim of appellant merely was that the production of documents and the examination of the witness "for the purpose of exploring and inquiring into the possibility or merits of a cause of action," on behalf of the Trustee against appellant or his firm, was improper, unreasonable, oppressive, and unlawful; and on its face, there was no merit to such a claim based on these grounds.

We come, then, to the question whether appellant was entitled to an automatic stay of ten days from the entry of the order adjudging him guilty of contempt. He contends that such order was a final decision, and since an appeal could be taken from such an order, it was a "judgment" within the meaning of Rule 54. Furthermore, inasmuch as it was a judgment, as appellant claims, within the intendment of the Rules, he insists that no proceedings could be taken for its enforcement until the expiration of ten days after its entry, under Rule 62.

■ Was the order adjudging appellant in contempt a final order? Contempts are of two kinds, criminal and civil. As said of such proceedings, in Board of Councilmen of City of Frankfort v. Deposit Bank of Frankfort, 6 Cir., 127 F. 812, 813: "One is for the punishment of the alleged contempt, as an offense, by fine and imprisonment, one or both, and in either case the expiation is to the public as for a criminal offense. The other is in the nature of a proceeding for the enforcement of some duty imposed upon the respondent, and is essentially a remedy for coercing him to do the thing required."

■ An order adjudging one guilty of criminal contempt is final and appealable; an order adjudging a party litigant in civil contempt is said to be interlocutory and reviewable only on appeal from the final decree in the main action. Fenton v. Walling, 9 Cir., 139 F.2d 608. But a civil contempt order against a person not a party to the suit is said to be final and appealable. Fenton v. Walling, supra.

■ It is true that the order adjudging appellant in contempt was in bankruptcy, but that fact does not make it an appealable final or interlocutory order in bankruptcy proceedings under Title 11 U.S.C.A. § 47, sub. a. A proceeding to punish for contempt one who has committed an act in violation of an injunction of a court of bankruptcy is not a proceeding in bankruptcy. The order sought to be reviewed is one made in a proceeding for contempt. Such a proceeding has nothing to do with the estate in bankruptcy. It is the exercise of the court's power to preserve order in its judicial proceedings and enforce its own orders. It is prosecuted for the benefit of the government, the courts, and the public. Title 11 U.S.C.A. § 69, gives the court of bankruptcy power to enforce obedience, by its officers and other persons, to all lawful orders. But the power of a court of bankruptcy to punish for contempt does not rest alone on this statute. It is a power which is inherent in all courts. A proceeding to punish for contempt committed in violation of an order issued in any suit is a proceeding entirely distinct and separate from that in which the order was issued. Morehouse v. Pacific Hardware & Steel Co., 9 Cir., 177 F. 337. Compare Leco Properties v. R. E. Crummer & Co., 5 Cir., 128 F.2d 110. Appeal from the order for contempt in this case was not an appeal from a proceeding in bankruptcy.

■ The order adjudging appellant in contempt in the instant case was for a civil contempt. Bessette v. W. B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997. The penalty was that he should be imprisoned until he obeyed the order of the court, being directed toward coercing him to testify. Appellant was not a party litigant but merely a witness. The order was, therefore, appealable. But was this order which was appealable, a "judgment" on the entry of which appellant was entitled to an automatic stay of ten days, as provided by Rule 62?

Whether contempt orders are judgments which are subject to the rule providing for an automatic stay of proceedings depends upon the nature of proceedings in contempt. The power of courts of the United States to punish for contempt is recognized by Title 18 U.S.C.A., Section 401. It is said to be a power derived from the grant to them of the national judicial power by Section 1 of Article III of the Constitution, which vested them with authority to enforce obedience to their orders, since this authority is an attribute of judicial power as inherent and indispensable as a judge. In re Nevitt, 8 Cir., 117 F. 448. To punish for contempt is an inherent power of federal courts. Bessette v. W. B. Conkey Co., supra; Swepston v. United States, 6 Cir., 251 F. 205. It is a summary power to prevent obstruction to the administration of justice, without which it would be in continual danger of being thwarted. Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405. Even where Congress has limited the power of the courts to punish for contempt of its authority by summary proceedings, there is expressly left the power to punish in this summary manner for disobedience of any party to any lawful writ, process, order, rule, decree, or command of such courts. Eilenbecker v. Plymouth County, 134 U.S. 31, 10 S.Ct. 424, 33 L.Ed. 801. It is to be emphasized that a proceeding for contempt of court is summary in form and swift in execution, Ryals v. United States, 5 Cir., 69 F.2d 946; and its efficiency as a means of securing the unimpeded administration of the law depends upon its summary character, Toledo Newspaper Co. v. United States, 6 Cir., 237 F. 986. Summary conviction and punishment for contempt accords due process of law; and it is settled that for direct contempts committed in the face of a court of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred. Such power is absolutely essential to the protection of the courts in the discharge of their functions. Without it,

judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them. Fisher v. Pace, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569; Ex parte Terry, supra.

Judgments or orders in contempt differ from judgments in other cases. Contempt proceedings are *sui generis*. They are criminal in their nature, in that the party is charged with doing something forbidden and, if found guilty, is punished. Yet they may be resorted to in civil, as well as criminal actions, and also independently of any civil or criminal action. Bessette v. W. B. Conkey Co., supra. They are "exertions of the power inherent in all courts to enforce obedience, something they must possess in order properly to perform their functions." Myers v. United States, 264 U.S. 95, 44 S.Ct. 272, 273, 68 L.Ed. 577.

According to Rule 53(a), (c), and (d) (2), and Rules 37 and 45 of the Federal Rules of Civil Procedure, the failure of a witness, without adequate excuse, to give evidence before a master or referee or the district court itself, may be punished as a contempt of court.

Does, then, the fact that a contempt order is appealable, bring it within the provisions of Rules 54 and 62, which set forth that any order from which an appeal may be taken is a judgment, and that no proceeding shall be taken to enforce a judgment until the expiration of ten days after its entry?

There can be no question that a contempt order, directed to making a witness answer questions, is not such an appealable order, under the Federal Rules of Civil Procedure, as is entitled to an automatic stay of proceedings until the expiration of ten days after its entry. The reason for this conclusion is that contempt proceedings are in a class by themselves. Chief Justice Taft, in Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527, pointed out that while a criminal contempt was an offense against the law, it was cer-

tain that, since the foundation of our government, proceedings to punish such offenses were not criminal prosecutions within the meaning of the Sixth Amendment or common understanding, providing for trial by jury, since such proceedings were *sui generis*, and not hedged about with all the safeguards provided in the Bill of Rights for protecting one accused of ordinary crime from the danger of unjust conviction; and he further observed that this was due to the fact that for years before the American Constitution, courts had been held to be inherently empowered to protect themselves and the function they perform by summary proceeding, without a jury, to punish disobedience to their orders.

In the case before us, the nature of contempt proceedings, as being *sui generis*, stands out in bold relief against the language of the Rules defining orders that are considered "judgments" and provisions as to automatic stays of proceedings upon the entry of such judgments. Contempt proceedings, as above observed, are in their nature summary; swift in execution; and their efficiency depends upon their summary character. It is not conceivable that it was the intent to destroy the very essence of their nature, by the Federal Rules of Civil Procedure. If everytime a witness, being of the opinion that an examination before the court was illegal, or burdensome, or oppressive, refused to answer a question, and upon an order adjudging him guilty of contempt and remanding him to jail, became entitled to an automatic

stay of ten days before the order could be enforced, contempt proceedings would lose all of their inherent quality and efficiency; and unless it clearly appears that such was the intent of the Federal Rules of Civil Procedure, they can not be so construed. The district court was not in error in proceeding to enforce the contempt order and commitment without waiting for the expiration of a ten-day period after its entry.

We come, then, to appellant's contention that the court was in error in requiring him to submit to cross-examination for the purpose of exploring the possibility of the existence of a cause of action against him or the firm of accountants of which he was a partner.

 The order of the district court appointing the Trustee embodied, in its directions to him, the pertinent provisions of Section 167 of the Bankruptcy Act. 11 U.S.C.A. § 567.[1] The Trustee's examination of Kiersted was a part of his investigation of the property rights of the bankrupt. For if the Trustee discovered a cause of action against Kiersted, his accounting firm, or anyone else, it was an asset of the estate, and, by the court's order, he was obliged to report any facts ascertained by him pertaining to any cause of action available to the estate. A trustee's examination, directed to developing facts in support of a cause of action, concerns "property * * * of the debtor," in the language, and within the intendment of the statute, In re Bush Terminal Co., 2 Cir., 105 F.2d 156; and an examination seeking informa-

1. The statute provides:
"Sec. 167. The trustee upon his appointment and qualification—
"(1) shall, if the judge shall so direct, forthwith investigate the acts, conduct, property, liabilities, and financial condition of the debtor, the operation of its business and the desirability of the continuance thereof, and any other matter relevant to the proceeding or to the formulation of a plan, and report thereon to the judge;
"(2) may, if the judge shall so direct, examine the directors and officers of the debtor and any other witnesses concerning the foregoing matters or any of them;
"(3) shall report to the judge any facts

ascertained by him pertaining to fraud, misconduct, mismanagement and irregularities, and to any causes of action available to the estate;
\* \* \* \* \* \*
"(5) shall, at the earliest date practicable, prepare and submit a brief statement of his investigation of the property, liabilities, and financial condition of the debtor, the operation of its business and the desirability of the continuance thereof, in such form and manner as the judge may direct, to the creditors, stockholders, indenture trustees, the Securities and Exchange Commission, and such other persons as the judge may designate;
\* \* \*."

tion to enable a trustee to prosecute a cause of action on behalf of the bankrupt estate is the most evident means of coming into possession of the bankrupt's property, In re Paramount Publix Corp., 2 Cir., 82 F.2d 230.

Appellant, however, contends that the chose in action, in this case, which became vested in the Trustee was not "property" of the debtor within the meaning of the Bankruptcy Act. In Gochenour v. Cleveland Terminals Bldg. Co., 6 Cir., 118 F.2d 89, this court held that there passes to the Trustee of a bankrupt corporation not only what, in strictness, may be called the property of the bankrupt, but also any rights of action to recover for its officers' misconduct; and that such rights were enforceable by the Trustee. Appellant, however, refers to this holding as indicating the court did not consider such a right of action as "property," and, further, declares that the cases relied upon by appellee are all concerned with causes of action which are based upon recovery of property formerly belonging to the bankrupt and alleged to be misappropriated by the witness or firm by which the witness was employed, and that while such causes of action may constitute property of the bankrupt and pass to the Trustee, a cause of action based upon fraud and breach of contract, as in the instant case, is not such property, and that an examination concerning it is outside that provided by the Bankruptcy Act. These contentions are not persuasive. It is our view that an asset of a bankrupt estate, in the nature of a cause of action based on fraud or breach of contract, is property within the meaning of Section 167 of the Bankruptcy Act, and that an investigation by an examination of witnesses concerning such property is within the provisions of the statute. Furthermore, the Trustee was, by order of the court, directed to investigate the acts, conduct, financial condition, and operation of the business of the debtor, pursuant to the authorization of the Bankruptcy Act. The accounting firm, of which appellant was a partner, had repeatedly audited the books of the bankrupt, and because of its close connection

with it, presumably, had considerable information about its acts, conduct, financial condition, and operation of its business. The examination of appellant, apart from any investigation of the debtor's property, was, therefore, entirely within the purview and provisions of the statute. It is further to be said that "from the beginning it has been recognized that the trustee may inquire at large and without limit except in cases of plain abuse, to be determined in the court's discretion. * * Moreover, it is no answer that he was seeking information to prosecute an action against the witness." Marx v. Chase National Bank, 2 Cir., 117 F.2d 800, 801. Accordingly, it is our conclusion that there was no error on the part of the district court in requiring appellant to submit to cross-examination for the purpose of exploring the possibility of such a cause of action.

Appellant advances the further contention that, since reorganization of the debtor company under Chapter X of the Bankruptcy Act was not possible at the time of the attempted examination of appellant and the proceedings then only awaited action to adjudge the debtor bankrupt, there was no basis for an examination under Section 167 of the Bankruptcy Act. This argument is based upon the theory that, since ordinary bankruptcy was the only proceeding which would then be before the court, the examination of the bankrupt would necessarily be confined to a narrower scope than that under Section 167, and that the broader examination pursued under that section of the Act by the Trustee was not authorized. We are not in accord with this contention. There was no termination of the reorganization proceedings, and any subsequent action or order would not create a new proceeding. An order directing that bankruptcy proceed on the failure of a reorganization proceeding only continues the proceeding. In such a case, the adjudication is related back to the date of the filing of the original petition, 11 U.S.C.A. § 638. Such an adjudication would not affect the examination that had prior thereto commenced before the Special Master, with respect to

the debtor's acts, conduct, property, and financial condition, and would not affect the Trustee's duty to report to the court "any facts ascertained by him pertaining * * * to any causes of action available to the estate." Obviously, to do this, the Trustee must have been authorized to conduct an investigation for the purpose of ascertaining such facts.

■■ With respect to the claim that the district court erred in not quashing the subpœna duces tecum on the ground that it was improper, unreasonable, and unlawful, we find this contention to be without merit. There is no showing that the documentary evidence sought was not relevant and material, or that the issuance of the subpœna duces tecum was arbitrary and capricious. Pathe Laboratories v. Du Pont Film Mfg. Corp., D.C., 3 F.R.D. 11; Walling v. American Rolbal Corp., 2 Cir., 135 F.2d 1003. See also In re American Medical Ass'n, D.C., 26 F.Supp. 58. Whether a subpœna duces tecum should be enforced is, in the first instance, a question for the trial court, whose decision should not be disturbed unless it clearly appears arbitrary, which is not the case in the controversy before us. Shotkin v. Nelson, 10 Cir., 146 F.2d 402.

In consideration of the foregoing, the orders of the district court denying appellant's motion to quash the subpœna duces tecum and adjudging appellant in contempt of court, are affirmed.

MARTIN, Circuit Judge (concurring).

I concur in the decision that the orders denying appellant's motion to quash the *subpœna duces tecum* and adjudging appellant in contempt should be affirmed. But, in reaching this conclusion, I think it is not essential that the court should resolve all the technical differences developed in the respective opinions of my respected colleagues. In the context of the case, carefully developed by Judge McAllister, it seems to me to be clear that the Civil Procedure Rules (54 and 62) pertaining to judgments have no applicability, and that appellant accordingly was not entitled to an automatic stay of ten days after entry in the district court of the order denying

his motion to quash the subpœna before his compulsion to testify and to produce the records demanded. A contrary construction would, in my judgment, be inconsistent with the expressed purpose of the rule makers that the rules should be construed to secure the just, speedy and inexpensive determination of every action.

MILLER, Circuit Judge (dissenting).

Regardless of the advisability of having interlocutory orders appealable as a matter of right, it is now settled under Section 24(a) of the present Bankruptcy Act; Section 47(a) Title 11, U.S.C.A; that the United States Courts of Appeals are "invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, * * *."

I am of the opinion that the order overruling the motion to quash the subpoena duces tecum and requiring the appellant to testify was an interlocutory order in a "proceeding in bankruptcy" which was appealable under the provisions of the foregoing statute. Matter of Winton Shirt Corp., 3 Cir., 104 F.2d 777; In re Youroveta Home & Foreign Trade Co., 2 Cir., 288 F. 507, 510; In re Bush Terminal Co., 2 Cir., 105 F.2d 156. The District Court apparently considered it as a part of the administration of the bankrupt estate as the immediate enforcement of it was in the Court's opinion necessary in order to properly administer the estate.

It also seems well settled that such interlocutory orders are appealable as a matter of right, with a few minor exceptions, referred to hereinafter, without the necessity of an allowance of an appeal by either the District Court or by the Court of Appeals. Albin v. Cowing Joint Co., 317 U.S. 211, 63 S.Ct. 170, 87 L.Ed. 212; Matter of Winton Shirt Corp., supra, 3 Cir., 104 F.2d 777, 779–780; Robertson v. Berger, 2 Cir., 102 F.2d 530; In re Bush Terminal Co., supra; In re Braker, 6 Cir., 127 F.2d 652.

Although Section 24(a) of the Bankruptcy Act grants an appeal from an interlocutory order as a matter of right, there is some judicial interpretation of the Section

holding that interlocutory orders not amounting to judicial rulings adjudging the rights of parties are not considered appealable orders. Collier on Bankruptcy, 14th Ed., Sec. 24.11, pages 730–731. Under such interpretation, an order to show cause, Morehouse v. Pacific Hardware & Steel Co., 9 Cir., 177 F. 337, an order directing a trial on the issues, In re Berthoud, 2 Cir., 238 F. 797, or an order of reference to a master, In re Hotel Governor Clinton, 2 Cir., 107 F.2d 398, have been held non-appealable. I do not think the order in the present case is of that nature. It decided a controversial question. The majority opinion shows that such a question has been considered by appellate courts in a number of instances. It adjudicated the rights of the appellant. It involved the exercise of judicial power as shown by the subsequent contempt proceedings to enforce compliance.

This Court has stated that, as a practical matter, administrative orders must have a certain degree of finality before they will be reviewed. Hoehn v. McIntosh, 6 Cir., 110 F.2d 199, 201. However, the opinion stated that "our jurisdiction is plain" and apparently considered it as within the discretion of the appellate court whether the interlocutory order should be reviewed then or later. In that case, the Court exercised immediate jurisdiction and reversed the interlocutory order. In the present case, the order, under consideration, although an administrative one, was a final disposition of appellant's rights in the controversy. In any event, jurisdiction existed in the appellate court to determine if the order lacked the necessary degree of finality to bring it within the judicial exception to the statutory right of review granted by Section 24(a).

There is also some authority to the effect that an interlocutory order in bankruptcy, involving the exercise of discretion, is not *an appealable order* in the absence of a showing of an abuse of discretion on the part of the district judge. I agree that such an order will not be *reversed* on appeal in the absence of such a showing, but I am. of the opinion that such an order is appealable and subject to review by the appellate court, for the purpose of determining if there has been an abuse of discretion, even though no abuse of discretion is ultimately found to exist. The narrow scope of review does not negative the right of review. Such orders were reviewed and reversed in Hoehn v. McIntosh, supra, 6 Cir.; In re California Associated Products Co., 9 Cir., 183 F.2d 946; In re Stanley Engineering Corp., 3 Cir., 164 F.2d 316; In re A. Roth Co., 7 Cir., 125 F.2d 396; Hedges v. Bushnell, 10 Cir., 106 F.2d 979. Such orders have been reviewed by the appellate court although affirmed, in most of the circuits, including our own; Federal Land Bank v. Strawn, 6 Cir., 102 F.2d 677; Third National Bank v. Schatten, 6 Cir., 81 F.2d 538; Federal Land Bank v. Hansen, 2 Cir., 113 F.2d 82, 84–85; In re Eastern Utilities Investing Corp., 3 Cir., 98 F.2d 620; Wragg v. Federal Land Bank, 5 Cir., 125 F.2d 1003, reversed 317 U. S. 325, 63 S.Ct. 273, 87 L.Ed. 300; In re Batavia Metal Products, 7 Cir., 166 F.2d 7; In re Kansas City Journal-Post Co., 8 Cir., 144 F.2d 816; In re McGoldrick, 9 Cir., 121 F.2d 746, certiorari denied 314 U. S. 675, 62 S.Ct. 187, 86 L.Ed. 540; Kenyon v. Chain O'Mines, 10 Cir., 107 F.2d 160. In those cases the orders of the District Court were affirmed, thus recognizing appellate jurisdiction, instead of dismissing the appeal for lack of jurisdiction. See Federal Land Bank v. Hansen, supra, 2 Cir., 113 F.2d 82, 84–85. Appellate jurisdiction does not exist or fail to exist depending upon the appellate court's ultimate ruling on the merits. Conceding that the order in the present case involved the exercise of discretion on the part of the District Judge, nevertheless there was jurisdiction in the appellate court to review it for abuse of discretion.

In In re Eastern Utilities Investing Corp., 3 Cir., 98 F.2d 620, which involved an issue very similar to the present one, the appellate court reviewed on appeal the validity of the order of the District Court directing a discovery examination, before the order was enforced, although recognizing that the order was one within the discretion of the District Court. To the same effect is Marx v. Chase National Bank, 2

Cir., 117 F.2d 800. See also Willcox v. Goess, 2 Cir., 79 F.2d 546.

The order, being reviewable, was accordingly a judgment under the provisions of Rule 54(a) Rules of Civil Procedure. Being a judgment, the District Court was not authorized to enforce it until the expiration of ten days after its entry. Rule 62(a) Rules of Civil Procedure. Appellant took an immediate appeal from the order, but was denied the opportunity to obtain a supersedeas or to apply to this Court for a stay pending appeal. Scripps-Howard Radio, Inc. v. F.C.C., 316 U.S. 4, 9–10, 62 S.Ct. 875, 86 L.Ed. 1229; Janssen v. Belding-Corticelli, Ltd., 3 Cir., 79 F.2d 828. Due to the nature of the order, the immediate enforcement of it destroyed the value of the appeal.

Under this view of the case, I am of the opinion that the judgment should be reversed, without it being necessary to rule on the validity of the order directing immediate enforcement of the order of contempt.